**In re Elmer BENSON, ind. and d/b/a Benson & Sons Denim Den, Debtor.**

**Bankruptcy No. 78 B 2740.**

United States Bankruptcy Court, N. D. Illinois, E. D.

March 19, 1981.

Louis W. Levit, Levit & Miller, Ltd., Chicago, Ill., for debtor.

Coin, Crowley, Nord & Hilliker, Chicago, Ill., for bank.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came to be heard on the motion of the Sandwich State Bank (The Bank) to dismiss debtor's Chapter XII proceeding or to adjudicate the debtor a bankrupt. Extensive documentary and testimonial evidence was presented. Important questions were raised regarding adequate protection and "cram-down" of the plan of arrangement. The court having examined all of the evidence, having considered all the briefs and memoranda filed by the parties, having thoroughly researched the issues involved and being fully advised in the premises, makes the following findings of fact and conclusions of law.[1]

### FINDINGS OF FACT

The Bank filed a claim in the amount of $179,093.28. Said claim was secured by the debtor's property. The Bank is the sole creditor secured by real property. Its claim arose from a loan made to the debtor in 1975. The loan was for two years at nine percent (9%) interest and became due and payable in April 1977. Debtor failed to pay off the loan in April 1977.

---

[1] Although the issues here raised involve the application of Chapter XII of the Bankruptcy Act, the controlling principles applicable in this case are not changed by the Bankruptcy Code. 11 U.S.C. Sec. 1129(b)(2)(A).

Debtor is a farmer owning land in Kane County, Illinois. He also operates a retail store in Kane County. Debtor's 1979 Federal Income Tax return shows a net profit of $11,946.69 from his retail business and a net profit of $10,880.31 from his farm operations. Debtor's summary of his farm operations for July 1979 through July 1980 shows a net profit before taxes of $22,178.26.

On April 22, 1978 debtor filed a petition for a real property arrangement pursuant to Chapter XII of the Bankruptcy Act of 1898. On April 23, 1980 debtor filed his amended plan of arrangement which is the subject of the instant dispute. Three classes of claims were affected by the plan and two of those classes accepted the plan. Class 6 of the plan consisted of four claims (secured by personal property) totalling $529,299.39 and two acceptances totaling $507,336.31 were filed. Class 7 of the plan consisted of 25 unsecured claims totalling $168,047.05 and 13 acceptances totalling $122,336.79 were filed. The Bank's claim was the sole claim in Class 4 and Class 4 was the only affected class which rejected the plan. The Bank states that $212,820.45 is the amount due on the claim as of November 10, 1980. The parties agree that the value of the real property securing the Bank's claim is far in excess of the amount of the Bank's claim.

The plan provides that the Bank's claim, to the extent fixed and allowed, will be paid in full over a 20 year period. The plan would pay off the Bank's claim plus interest on the claim.[2] The Bank would receive $20,000 one year after confirmation of the plan and the balance due on the claim would be paid in 19 equal annual installments. The plan would be funded by income from the debtor's retail store and farm operations.

The Bank's president stated that the Bank generally does not make long-term farm real estate mortgage loans. He further stated that if the Bank were to make such a long-term loan to a qualified borrower, the Bank would charge a 15% annual interest rate. Finally, a $212,820.45 loan amortized over 20 years of monthly installments at 15% annual interest would require annual principal and interest payments of $33,628.92.

## ISSUES

The court must decide whether a Chapter XII plan may be "crammed-down" over the objection of the sole creditor secured by real property, the Bank. The other issue is whether the plan provides the Bank with "adequate protection for the realization by [the Bank] of the value of [its] debt." § 461(11) of the Bankruptcy Act of 1898, formerly 11 U.S.C. § 861(11).

## DISCUSSION

■ Section 461(11) of the Bankruptcy Act provides a mechanism whereby a plan of arrangement may be confirmed over the objection of a creditor or class thereof. Applying § 461(11) to an objecting creditor forces that creditor to abide by the terms of the plan. The plan is "crammed-down" upon the creditor over his objections. Debtor herein urges the court to "cramdown" the plan over the Bank's objection while the Bank contends a plan cannot be "crammed-down" over the objection of the sole secured creditor.

The reported cases have dealt with situations where all the secured creditors have rejected the plan or where the sole secured creditor rejected the plan. In practical terms however, when the sole secured creditor rejects the plan, the plan is unanimously rejected by the secured creditors. Most of the courts have assumed that a plan cannot be "crammed-down" unless at least one class of affected creditors have accepted the plan by the requisite majority.[3] In the

---

2. The record lacks clarity but it appears that the plan proposes to pay the claim off at 10% annual interest.

3. Dole, "The Chapter XII Cram-Down Provisions," 82 *Com.L.J.* 197 (1977); Macey and Macey, Jr., "The Chapter XII Chrysalis," 52

instant case two affected classes, one of them a secured class, have accepted the plan by the requisite majority. The general rule seems to be that a plan cannot be "crammed-down" over the objection of the secured creditor. *In re Herweg*, 119 F.2d 941 (7th Cir. 1941). The great majority of the reported cases follow the rule that:

> Regardless of compliance with § 461(11), no plan of arrangement may be confirmed over the unanimous objection of secured creditors . . .

*In re Spicewood Associates*, 445 F.Supp. 564 (N.D.Ill.1977). However, even *Herweg, supra*, which held that a plan could not be "crammed-down" over the unanimous objection of secured creditors stated in dicta that:

> We are convinced that . . . the obvious connotation of the language quoted (§ 461(11)(c)) is that no arrangement shall be blocked because one group of creditors opposes it, provided that they are adequately protected by the arrangement . . .

*Id.* at 943. See also 52 Am.Bankr.L.J. at 247. This Court will review the statutory scheme of Chapter XII before resolving the issues involved herein.

The primary purpose of Chapter XII is to effect orderly rehabilitation of debtor's owning real property because:

> The policy of Chapter XII is rooted in society's interest in substituting arrangement for liquidation where possible . . .

*In re Colonial Realty Investment Co.*, 516 F.2d 154 at 160 (1st Cir. 1975). Section 467 allows confirmation of a plan upon unanimous acceptance of the creditors. Absent unanimous acceptance, § 468 provides that a plan may be confirmed when:

> (1) it has been accepted in writing by creditors of each class, holding two-thirds

in amount of the debts of such class affected by the arrangement . . . *exclusive of* creditors or *any class of them* who are not affected by the arrangement *or for whom payment or protection has been provided as prescribed in paragraph (11) of section 861 of this title* . . . *(emphasis added).*

The statutory scheme provides that absent unanimous acceptance of the plan, the plan may be confirmed when creditors affected by the plan holding two-thirds in amount of the debts of that class accept the plan *or* when affected creditors are paid or protected as set forth in a § 461(11). This court interprets the above-quoted language to mean that creditor acceptance of the plan is unnecessary provided the creditors are paid or protected pursuant to § 461(11). Section 461(11) states that a plan:

> shall provide for any class of creditors *which is affected by and does not accept the arrangement* by the two-thirds majority in amount required under this chapter, *adequate protection for the realization by them of the value of their debts* . . . (emphasis added).

This court holds that under the "cram-down" procedure as embodied by Congress in § 461(11), creditor consent to a plan of arrangement is unnecessary. A plan may be "crammed-down" over the objection of the sole secured creditor provided that the creditor is "adequately protected" as defined in § 461(11). Furthermore, Congress' repeal of the "fair and equitable" test from Chapter XII in 1952 thereby abolishing the judicially created "absolute priority" rule, indicates a Congressional intent to make adequate protection rather than creditor consent, the sole criterion essential to confirm a § 461(11) "cram-down."[4]

This court must find that debtor's plan adequately protects the Bank before the

---

Am.Bankr.L.J. (1978); Merrick and Bufthis, "Chapter XII—Why Is It," 52 *Am.Bankr.L.J.* (1978).

4. Bankruptcy Judge Norton of the Northern District of Georgia provided an excellent analysis of the effect of the 1952 amendments repealing the "fair and equitable" test in *In the Matter of Hobson Pike Associates, Ltd.*, 3 Bankr.Ct.Dec. 1205 (1977). *Hobson, id.*, did

not confirm a § 461(11) "cram-down" because the plan did not provide the sole secured creditor with adequate protection but in dicta the court did state that a plan could be "crammed-down" over the objection of the sole secured creditor if the plan "adequately protected" the creditor.

plan can be confirmed. In the instant case, the value of the security greatly exceeds the amount of the debt, thus the Bank is entitled to the principal of its claim plus interest. *In re Schwab Adams Co.,* 463 F.Supp. 8 (S.D.N.Y.1978). The plan discussed *supra,* proposes to extend the Bank's original two-year loan into a twenty-year loan. The Bank would receive its first payment under the plan one year after confirmation. The Bank would receive interest on its claim at a rate substantially less than the present current market rate on similar loans. The parties agree that "It is plain that "adequate protection" must be completely compensatory." *In re Murel Holding Corporation,* 75 F.2d 941 (2nd Cir. 1935). Debtor contends that the plan provides the Bank with adequate protection by paying the Bank's claim in full plus interest. The Bank claims there is no adequate protection because the plan is not "immediately and completely compensatory."

■ Section 461(11) provides three specific and one general way whereby adequate protection may be found to exist. The first method allows transfer or sale of the property subject to the debts, § 461(11)(a); the second allows a sale free and clear of liens with the debt attaching to the sale proceeds, § 461(11)(b); the third method allows for appraisal of the debt's value and cash payment of such value, § 461(11)(c); and the final method, used by debtor herein, allows "such method as will . . . equitably and fairly provide such protection." § 461(11)(d). Debtor contends that the proposed plan "equitably and fairly" provides the Bank with adequate protection. Debtor correctly notes that the plan does not have to be immediately compensatory. *Wachovia Bank and Trust Company v. Harris,* 455 F.2d 841 (4th Cir. 1972). In the instant case, debtor's proposal to extend a two-year loan over twenty years must equitably and fairly provide the bank with adequate protection that is completely compensatory.

■ It does not appear that the debtor's plan as proposed provides the bank with adequate protection. Based on the record of the proceedings, the court finds that the bank would be adequately protected under an amended plan, as follows: (1) The value of the mortgaged property is substantially above the amount of the bank's claim; (2) the claim in round figures is $213,000; (3) amortization under the plan must call for a principal payment of $20,000 the first year, the balance of the principal payments to be spread evenly over 19 years at $10,504 per year; (4) the annual interest payment due is the cost of money to the creditor which is the proper measure in determining the interest factor providing adequate protection (see *GMAC v. Willis,* 6 B.R. 555, 558–60 (1980) and *In re Crockett,* 3 B.R. 365 (1980), assumed here to be 11% for the bank, (5) consent of the secured creditor is not required if there is adequate protection, i. e., payment in cash or future payments equivalent to present value. (The present time weighted value of $213,000 amortized over twenty years at 11% is $452,550).

■ In addition to the foregoing, adequate protection would require additional payments to the Bank to cover its costs in servicing the loan and any of the other fees and charges regularly included in a secured transaction of this type.

■ However, adequate protection need not be geared to whether the arrangement is profitable for the creditor, merely whether it is getting the value of its collateral. The cost of money to the lender should be the principal determinant, not what the creditor might have been able to do with the money elsewhere. It may be that this arrangement allows the debtor to speculate with the money for twenty years but so long as the creditor is adequately protected, the requirements of the statute are satisfied. Adequate protection is all that § 461(11) requires. If it is there, the debtor can do almost anything. If it is not, he can do nothing.

■ Since debtor's farmland is undisputably worth far more than the Bank's claim and the value is not depreciating, adequate protection exists if the debtor's plan pays the Bank's claim over 20 years with interest at rates to make the bank whole.

However, if the plan is so amended the debtor must convince the court that the

plan if modified, with higher annual payments than those in the debtor's current proposal, would be feasible to complete. Since there would be some doubt as to the debtor's ability to maintain the plan payments, the debtor would be required to waive certain of its protections under the Illinois foreclosure statute so that the mortgagee would not suffer undue delay in the event of a default.[5] If the debtor defaulted under the plan, the Bank would be protected by an expedited foreclosure on the valuable farmland which is security for its loan.

WHEREFORE, IT IS HEREBY ORDERED that the Sandwich State Bank's motion to dismiss debtor's Chapter XII proceeding is hereby continued to April 11, 1981 at 10:00 a.m., by which time debtor will have had the opportunity to file an amended plan, modified to more adequately protect the Bank and further, that the previously adjourned overall hearing on confirmation, dismissal or conversion (adjudication [6]) is hereby reset for that same date.

---

5. Although waiver of rights in foreclosure are sometimes unenforceable as against public policy, that would not appear to be a concern in the context of a plan of arrangement under Chapter XII, especially where it is part of an order of the Bankruptcy Court, consented to by counsel for debtor.

6. Since the debtor is a farmer, no adjudication in bankruptcy may be entered against him without his written consent filed with the court. Section 484 of the Bankruptcy Act and Bankruptcy Rule 12–41(e).