In re Duane Lee WHITE, Sr. a/k/a Duane L. White, Sr., Dorothy Irene White a/k/a Dorothy I. White d/b/a D & D Trucking d/b/a Duane & Dorothy White Farm f/d/b/a K & M Supply, Debtors.

Bankruptcy No. 82–40509.

United States Bankruptcy Court, D. Kansas.

Dec. 29, 1983.

Roger K. Viola of Stumbo, Stumbo, Buening & Viola, Topeka, Kan., for debtors.

Richard O. Skoog of Skoog & Latimer, Ottawa, Kan., for Northeast Kansas Production Credit Ass'n (PCA).

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 11 proceeding, the Court must determine several confirmation issues.

A confirmation hearing was held and the Court is ready to rule.

## FINDINGS OF FACT

Northeast Kansas Production Credit Association is a secured creditor with a lien on the debtors' real estate and various items of personalty. PCA has elected under 11 U.S.C. § 1111(b)(2). In a previous order, the Court made the following findings:

PCA has an interest in personal property with a value of $34,450.00. PCA has a second mortgage interest in 157 acres of the debtors' land with a value of $92,200.00, subject to a first mortgage in the amount of $55,200.00. Thus, PCA's interest in the 157 acres of land is valued at $42,200.00. The debtors also own 3 acres subject to a life estate in Mrs. White's mother, who lives in the homestead situated on the 3 acres, and subject to the first mortgagee on the real estate. The Court discounted the value of 3 acres based on the life expectancy of Mrs. White's mother, and valued the 3 acres at $11,073.89. Therefore, the Court held PCA's secured claim was valued at $87,725.00.

The debtors' first plan proposed a 12 year payout to PCA. Upon objection by the PCA, the Court ruled the debtors had not carried their burden of proving the feasibility of their proposed payments. The debtors' first plan also proposed to make current contract payments to Mrs. White's mother, the seller of real estate to the debtors.

PCA has objected to the new plan, and voted to reject the plan. In summary, the debtors' new plan proposes to waive payments to Mrs. White's mother (she does not object) and to satisfy PCA's after election claim of $91,475.65 over 30 years in the following manner:

60 semi annual, equal principal payments, plus accrued interest payments.

The Court has amortized this proposal over 30 years, based on the debtors' proposed annual discount rate of 11%. PCA has not objected to this discount rate. The debtors' first payment will be $1,462.09 principal plus $4,824.88 accrued interest, for a total payment of $6,286.97. By directing the application of principal payments, to which the creditor has not objected, the debtors' semi-annual interest payments will decrease over the term of the plan, as their principal payment of $1,462.09 remains constant. Thus, for example, the 10th payment (5 years after confirmation) will be $5,563.23. The 20th payment (10 years after confirmation) will be $4,759.08. The last payment 30 years after confirmation will be $1,542.48.

The debtors' farming operation consists of crops and chickens. Mr. White operates the farm, including the planting of crops and working the land. The farm is located in Osage County and is the farm on which Mrs. White grew up. In 1974 the debtors purchased the land from Mrs. White's mother pursuant to an installment land sales contract. Mrs. White's mother lives in the house on the farm. The debtors, their 13 year old daughter and 27 year old daughter live in a mobile home on the farm.

The chickens provide approximately 3 cases of eggs per week (30 dozen eggs per case at approximately 85¢/dozen). The crops grown are wheat and soybeans.

Mr. White began a dump truck-hauling business just prior to the filing of this chapter 11 petition. This business began with one unencumbered truck, and during the pendency of this proceeding Mr. White has acquired three additional trucks. Mr. White is apparently something of a mechanical wizard, purchasing trucks in the twilight of their useful life, repairing them, and keeping them in working order.

Mr. White's trucking operation usually runs until approximately November 15th depending on the weather. During the winter months Mr. White hauls and plows snow. Drivers of Mr. White's trucks are paid 20% of the gross receipts of the truck. Mr. White has several outstanding hauling contracts which will be completed, apparently by the spring. There was no testimony concerning the probability of future contracts, the nature of the dump truck-hauling industry, trends in the industry, nor average expectations of future earnings.

The debtors' monthly reports filed with the Court indicate the following net income:

| | |
|---|---|
| June, 1982 | $3,551.43 |
| July | −4,499.00 |
| August | 943.53 |
| September | 4,990.39 |
| October | 8,741.87 |
| November | 4,780.00 |
| December | −2,350.61 |
| January, 1983 | 2,594.00 |
| February | −5,103.97 |
| March | −4,589.46 |
| April | −4,488.32 |
| May | unreported |
| June | 3,500.43 |
| July | 6,363.99 |
| August | 1,874.49 |
| September | 1,443.97 |
| October | 1,812.70 |
| November | 3,786.43 |
| | $23,401.87 |

This is approximately $1,376.58/month or $8,259.48 per 6 months. This amount represents money available for debt service after all business and personal expenses. At the hearing Mrs. White indicated the January, 1983 monthly report failed to include income from the sale of soybeans in the amount of $4,101.13. Thus, their total net income was $27,503, or $1,617.82 per month ($9,706.92 per six months). These net income figures include the expense of purchasing at least 2 of the 3 trucks acquired by the Whites during this chapter 11. The last two purchases made in 1983 cost $9,000. The debtors offer this expense as tantamount to depreciation and allotment of money to purchase additional trucks in the future. The trucks are owned free and clear by the debtors.

There are other creditors the debtors propose to pay. The debtors owe Capital Federal Savings and Loan Association approximately $8,000 to $9,000, secured by a certificate of deposit owned by Mrs. White's mother. The debtors indicate Capital Federal is willing to be paid interest only and to continue to roll term notes. Two monthly payments of $84.44 each remain owing to John Deere. Mrs. White's mother, Beulah Tucker, has agreed to waive her right to be paid $6,300.00 per year. Unsecured creditors will be paid pro rata, $100 per month for 12 months.

Mrs. White is 49, and thus will be 79 when the plan is completed. Mr. White is 40 and thus will be 70 when the plan is completed.

The debtors have accumulated over $15,000 in the debtor-in-possession bank accounts. They also have soybeans to be sold, dump truck-hauling accounts receivable, wheat straw, and eggs with a total approximate value of $8,000. In addition they owe or will shortly owe various taxes, including real estate and employer withholding taxes.

The Court views the continuing essential issue in this case as the feasibility of the debtors' plan especially in light of the 30 year proposed extension of PCA's claim.

## CONCLUSIONS OF LAW

The pertinent provisions of 11 U.S.C. § 1129 provide:

(a) The court shall confirm a plan only if all the following requirements are met:

(11) confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(b) ... (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class include the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i) ...

(ii) That each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; ...

The debtors have proposed a 30 years plan funded in large part by the efforts of Mr. White in running his dump truck-hauling business, which he began shortly before instituting this chapter 11 proceeding and which has really only been operating on a full scale during the pendency of this proceeding.

There are several objections to the plan, and grounds for rejecting the plan raised by the primary secured creditor, Production Credit Association (PCA). The Court will endeavor to analyze each objection and contention.

PCA generally lends money on a short term basis. Notes are executed that come due approximately every 180 or 360 days. The Court has no doubt that PCA is not in the business of making a single long term loan evidenced by a single long term note.

There are a number of reported cases that bear on the issue of long-term extensions, in both chapter XII of the Act and chapter 11 of the Code. Some involve the long-term extension of debts for loans made originally by creditors on a short term basis.

In *In Re Macon Uplands Venture,* 2 B.R. 429, 5 BCD 885 (D.C.M.D.Ga.1979) the debtor proposed to extend payment of a mortgagee's debt over a period of from 32 to 48 years. The debtor was unable to project its financial condition for more than 10 years. The economic life of the hotel, the real estate asset, which was the subject of the arrangement, was 25–30 years. In refusing to confirm the plan the court stated:

The debtor's plan of arrangement is wholly speculative. The debtor can be enthusiastic about tomorrow, today; but that is not sufficient. Ideas are noble, but it is mind boggling to think of the potential hazards that are probable in the future which would prevent the execution of the plan. The seeds in an apple can be counted, but the apples in a seed cannot be counted .... The debtor's goals and realities are in conflict.

2 B.R. 429, 5 BCD at 890.

In *In Re 750 Ave. Assocs.,* 5 BCD 368 (Bankr.S.D.N.Y.1979) the debtor attempted to extend a mortgage over 20 years. The court held:

There is nothing in the record here to indicate that this debtor ... will have the wherewithal to retire its debt to the bank in twenty years.... Clearly such a proposed arrangement ... would impermissibly allow the debtor to speculate with the Bank's funds.

5 BCD at 371. In *In Re KRO Assocs.,* 4 BCD 462 (Bankr.S.D.N.Y.1978), Judge Babbitt indicated that payments over longer periods of time require stricter proof by the debtor of feasibility and adequate protection. In *In Re Country Green Ltd. Partnership,* 3 BCD 427 (Bankr.W.D.Va.1977), a 30 years extension was not approved because the Court felt the plan would allow the debtor to speculate with the secured creditor's money.

In *In Re Nob Hill Apts.,* 2 BCD 1463 (Bankr.N.D.Ga.1976) (Norton, J.), the debtor proposed to pay a short term construction lender-mortgagee over 30 years with a balloon payment after 12 years. Judge Norton held the creditor entered into its,

relationship with the debtor solely as a construction lender, and it never planned to become a permanent lender. 2 BCD at 1464. Judge Norton went on to deny confirmation on the basis that the plan to convert the short term construction mortgagee into a permanent lender did not provide the mortgagee with adequate protection. Id. at 1465.

On the other hand, in *In Re Benson*, 9 B.R. 854, 24 CBC 213 (Bkrtcy.N.D.Ill.1981), a 20 year extension of a short term lender was approved. The debtor was a farmer and borrowed money from a bank that did not make long term real estate mortgage loans. The debtor executed a note payable in 2 years. After default, the debtor filed a chapter XII arrangement and proposed to pay the bank over 20 years. The court held:

> [A]dequate protection need not be geared to whether the arrangement is profitable for the creditor, merely whether it is getting the value of its collateral.... It may be that this arrangement allows the debtor to speculate with the money for twenty years but so long as the creditor is adequately protected, the requirements of the statute are satisfied. Adequate protection is all that § 461(11) requires. If it is there, the debtor can do almost anything. If it is not, he can do nothing.

9 B.R. at 858.

In another recent farm reorganization decision in which the debtor sought a 7 year extension followed by a balloon payment, the court stated:

> [W]here a dissenting claimant is receiving payment in full over a reasonable period of time, with an appropriate interest or discount factor being paid, that creditor is receiving all that the law requires, that is—full payment over a reasonable period of time....

*In Re Hollanger*, 15 B.R. 35, 47, 8 BCD 365, 5 CBC2d 386 (Bkrtcy.W.D.La.1981).

Finally, in *Wachovia Bank & Trust Co. v. Harris (In Re Cabana Club Apts., Inc.)*, 455 F.2d 841 (4th Cir.1972), a construction loan was made by Wachovia Bank & Trust to the debtor. The loan on its face was for a term of 20 years, but it was contemplated that after construction was completed, the loan would be assigned to Aetna Life Insurance Co. Aetna would accept the assignment only if the debtor could offer the title to real estate under construction free of any liens. Wachovia's subsidiary was a title company that refused to insure marketable title to the debtor's real estate apparently based on an incorrect interpretation of North Carolina law. The court ruled that even though the 20 year term may have been in violation of Wachovia's lending policies, nevertheless the debtor's plan provided the same term as Wachovia's construction loan. Furthermore, the Court believed the plan was confirmable because Wachovia initially ran the risk that Aetna would not necessarily accept the loan, and because of Wachovia's own responsibility in not insuring the title.

The Court believes that § 1129 does not per se prohibit long term payouts. If the mathematical requirements of § 1129(b)(2)(A)(i)(II) are satisfied, if the creditor is adequately protected under the plan, pursuant to the general fair and equitable requirement of § 1129(b)(2), and if the debtors can prove they can make payments over the life of the plan pursuant to § 1129(a)(11), then the plan is confirmable and can be crammed down on a rejecting class of secured claim holders, regardless of normal lending practices or policies.

Stating the holding, however, is quite different from ultimate confirmation. There is no question that *In Re Benson, In Re Hollanger* and *In Re Wachovia* indicate long-term extensions are permissible. On the other hand, many of the other cases previously discussed reveal the pitfalls of plans proposing long term payouts. Where the courts stated that the debtor's plan was speculative, it is clear there was great concern over the ability of the debtor to make proposed payments in the distant future. Thus, as indicated in *In Re KRO Assocs.*, supra, *In Re 750 Ave. Assocs.*, supra and *In Re Macon Uplands Venture*, supra, it may not be a simple task for a debtor to present

credible evidence and project its cash flow and ability to service plan payments 30 years hence. In sum, the longer a debtor intends to take in retiring plan obligations, the more difficult it may be to prove feasibility.

■ In addition, the plan must adequately protect the creditor's claim. Where property is depreciating, such as equipment, the debtor may be required to provide replacement liens as the equipment becomes unserviceable, and the debtor must prove that at all times during the life of the plan, the value of the existing collateral in which the creditor has a lien is at least what the creditor is still owed under the plan. Once again, this may be a difficult if not impossible burden of proof for the debtor in a payout extended beyond the life of the collateral. The promise of replacement liens in the future may not be sufficient to protect the creditor where the existence and acquisition of any future collateral in which the creditor will be granted a lien is in the total discretion of the debtor.

### 1. Adequate Protection

In this Court's prior order, the PCA's secured claim was broken down into a claim secured by personalty with a value of $34,450.00, and a claim secured by a second mortgage on real estate valued at $53,275.00. The debtors' plan proposes to pay the entire claim of $87,725.00 at an 11% discount rate over 30 years, with 60 equal semi-annual principal payments, and 60 semi-annual interest payments.

The creditor has not objected to the debtors' plan based on lack of adequate protection. Even if an objection had been lodged, under the facts of this case, appreciation rather than depreciation in real property value is likely. PCA has protected this appreciation in value by making an election pursuant to § 1111(b)(2). Thus, absent any evidence to the contrary which was not presented by PCA, it would appear PCA is adequately protected in light of its election.

### 2. Feasibility

This Court must find that confirmation of this plan is not likely to be followed by liquidation or further reorganization. 11 U.S.C. § 1129(a)(11).

The monthly reports filed with the Court and the United States Trustee's Office indicate the debtors' average net income is approximately $1,600 per month, or $9,700 per 6 months. This amount represents money available for debt service and is computed after all expenses, business and personal. The debtors' semi-annual payments to PCA will be no more than $6,286.97. Thus, the debtors argue, they can afford to satisfy PCA's loan in the manner proposed.

■ A closer examination of the debtors' monthly reports yields two telling facts. First, the debtors' income is derived in great part from their dump truck-hauling operation. Second, only since June, 1983 have the debtors begun to earn sufficient income to satisfy their plan payments. The testimony at the debtors' hearing did not reveal any known, future contracts other than completion of contracts already in existence. Thus, the Court is asked to believe that the debtors will generate the income necessary to service the plan payments based on a hauling operation barely begun before this petition was filed, based on no future contracts, and based on only 6 recent months of sufficient profitability. Charles Dickens once wrote:

> Buy an annuity cheap, and make your life interesting to yourself and everybody else that watches the speculation.

From Martin Chuzzlewit, chapter 18. While it might be interesting for the debtors, the Court, and PCA to spend the next 30 years watching the debtors' cash flow, this Court cannot allow confirmation out of curiosity or interest. The Court is required to make certain findings under § 1129(a)(11). The Court needs some concrete projection of future income in the hauling business. Although the debtors are certainly permitted to testify concerning their ability to service debt, the Court is not so certain the debtors have the ability to make economic projections that would indicate a probable ability to service debts 1 year from now, 5 years from now, 10 years from now, 20 years from now or 30 years

from now. While this Court has noted that nothing in § 1129(b)(2)(A) prohibits long term payouts, nonetheless there is a type of sliding scale in operation. In general, proof of feasibility is an easier task when payouts are done over shorter periods of time. The longer a debtor proposes a payout, the more difficult it may become to prove distant future ability to service debts. Testimony by debtors on their own behalf that they have recently had 6 profitable months is insufficient, without more, to project their ability into the 1990's and the next century. Simply stated, the debtors have no historical basis for the trucking business. Without evidence of the reliability of income into the future, absent reliable projections of expected earnings in the future, and in the face of an extension the magnitude of the one proposed by the debtors, this Court finds the debtors have not carried their burden of proving feasibility for the term of their proposed payout.

This is a very painful finding for the Court as the Court is presented with two very hard working individual debtors. The Court, however, is simply unable to make the required findings to allow confirmation of the plan, especially in light of PCA's objections.

The Court has previously permitted the debtors to amend their plan and be given a second opportunity to prove feasibility. Unfortunately, some 18 months after the chapter 11 filing, the debtors' modifications have placed the second plan in a more untenable position than was the first plan.

In its objection to the plan of November 7, 1983, PCA has requested that the Court dismiss the case. Pursuant to 11 U.S.C. § 1112(b)(2), (5), the instant case will be dismissed in 2 weeks if the debtors do not voluntarily convert this case to a chapter 7.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.