In re William L. O'FARRELL & Joan O'Farrell, Debtor(s).

Bankruptcy No. 86–04550.

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

June 2, 1987.

N. Sanders Sauls, Tallahassee, Fla., for debtors'.

James R. McAtee, Pensacola, Fla., Trustee.

## ORDER

LEWIS M. KILLIAN, JR., Bankruptcy Judge.

THIS MATTER came on to be heard on confirmation of the debtors' Chapter 12 plan of reorganization. The debtors have presented an amended plan which provides for the surrender of certain parcels of property to secured creditors and consequent down-sizing of the farming operation in an effort to restructure their finances and arrange for satisfaction of claims and manageable debt service from future earnings.

Federal Land Bank, (F.L.B.) the primary secured creditor of the debtors, has opposed confirmation of the plan on several grounds. The objections of F.L.B. involve:

• dispute as to the value of the debtors' real property;

• a claim that the severance and return of dairy improvements and encompassing acreage as a separate unitary tract will effect a limitation on use and resultant diminution in value of said parcel and improvements;

• whether the debtor must include F.L.B. as an unsecured creditor as to any deficiency resulting from a valuation and return of certain of its collateral. Also, as a potential unsecured creditor, F.L.B. challenges whether the plan distribution will be greater than that which would be received if the estate were liquidated under Chapter 7;

• whether the proposal to pay F.L.B. annual payments over a thirty year term in contravention of the terms of its accelerated note and mortgage is permissible;

• whether the 9% interest proposed by the debtors in payment of the F.L.B.'s secured claim is sufficient to give F.L.B. the present value of its allowed secured claim;

• the feasibility of the proposed plan ... i.e. if the debtors can make the plan payments;

• the debtors' right to pay the real estate taxes over a period of three years, a pro-

posal which would constitute a default under the F.L.B. mortgage provisions;

- the plan provision vesting the property of the estate in the debtor free and clear of any claim or interest of any creditor provided for in the plan.

■ As a point of procedure, F.L.B. objected to a continuance of the confirmation hearing past the deadline imposed by the Bankruptcy Code, to wit: Section 1224, which requires that Chapter 12 confirmation hearings be concluded within forty-five (45) days after the filing of the plan. There is an exception for cause authorized within that provision. The Court deems such cause to exist in that the plan proponent and creditor herein requested only one afternoon for presentation of their respective evidence as to valuation and confirmation, a reservation of time which proved to be wholly insufficient for a comprehensive presentation of the testimony and argument of issues herein. Since the continuance was engendered by the parties themselves and since the Court's calendar mandated a carryover of the proceedings, the Court finds sufficient cause to continue the plan confirmation to its conclusion on the forty sixth day following the filing of the plan.

With regard to the proper valuation of the various parcels of real property and improvements, after reviewing the testimony, evidence, and argument of counsel, the Court has determined said values and has heretofore issued a separate order setting forth those values.

■ Upon consideration of F.L.B.'s objection to a plan provision for the severance of certain dairy improvements and surrounding acreage, the Court finds the objection without merit. The testimony adduced at hearing supported the continued usefulness and value of the severed portion. Section 1222(b)(8) permits "the sale of all or *any part* of the property of the estate or the distribution of all or *any part* of the property of the estate among those having an interest in such property". (emphasis supplied). It is not the creditor's prerogative to select which or how much of the debtors' property is to be disposed of

under this provision. Federal Land Bank's objection is therefore denied.

The debtors' plan provides for unsecured creditors in Class VII. Upon the Court's valuation of property and the debtors' return of certain collateral to F.L.B. as proposed, any deficiency due F.L.B. shall be treated as an unsecured claim by debtors and thus included within Class VII of the Chapter 12 plan. Federal Land Bank's challenge as an unsecured creditor to the amount of payments proposed to unsecureds under the plan is not well taken. The debtors propose to submit all disposable income to the plan, and the liquidation analysis presented upon hearing shows a greater return to holders of unsecured claims under the plan than that realizable under a Chapter 7 proceeding. (See, §§ 1225(b)(1)(B) and 1225(a)(4)).

■ The principal objection of F.L.B. is to the debtors' proposal to pay the allowed secured claim of F.L.B. over a thirty year term at 9% interest. F.L.B. contends that the proposed annual payments extending for a period of thirty years is contrary to the provisions of its original note and mortgage. Section 1222 of the Bankruptcy Code specifically authorizes deferred payments: "... the plan ... may provide for payment of allowed secured claims consistent with Section 1225(a)(5) of this title ... over a period *exceeding* the period permitted under section 1222(c)." (i.e. 3–5 years). (emphasis supplied). (See, § 1222(b)(9)). Section 1225(a)(5) states in pertinent part that "the court shall confirm a plan if—(5) with respect to each allowed secured claim provided for by the plan— ... (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim...." The Code permits deferred payments over extended periods regardless of the prior financial arrangements between the parties and subsequent acceleration of the obligation due, so long as the contingencies of § 1225(a)(5)(B)(i) & (ii) are satisfied; i.e. ...

the mathematical requirements are met, the creditor is adequately protected under the plan, and the debtors can prove they can make payments over the life of the plan. See, *In re White*, 36 B.R. 199, 203 (Bkrtcy.D.Kan.1983) and cases cited therein dealing with statutorily permissible deferred payments under Chapter 11; see also *In re Mulnix*, 54 B.R. 481 (Bkrtcy.N.D.IA 1985). Loans secured by real estate are frequently made for terms of thirty (30) years and the Court finds that this is a reasonable term for such a payback.

As to the payments being made annually, the Court concurs with the conclusion reached by Samuel J. Gerdano and A. Thomas Small in their overview of the new Chapter 12 as printed in *American Bankruptcy Institute*, Legislative Seminar: Bankruptcy Developments 1986, (1986); Chapter 12—Adjustment of Debt of a Family Farmer with Regular Annual Income, at page 52. "The title of Chapter 12, 'Adjustment of Debts of a Farmer with a Regular Annual Income' and the definition of family farmer with regular income indicate that annual payments are permissible".

Federal Land Bank has further objected to the rate of interest which the debtors have proposed to pay on the written down secured claim. The plan provides for interest to be paid at the rate of nine (9%) percent per annum.

The purpose of the interest payment to be paid on the secured claim under the plan is to provide the creditor with the value "as of the effective date of the plan" of its secured claim. It is the Court's responsibility to set an appropriate discount or interest rate which will provide such value.

The proper method for establishing the appropriate discount rate is set forth in *Matter of Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983). There, the Court in a Chapter 11 case held that the rate of interest required to give the I.R.S. value as of the effective date of the plan equal to its claim was not the statutory rate on unpaid federal tax liabilities pursuant to 26 U.S.C. § 6621, but was the "prevailing market rate for a loan of a term equal to the payout period with due consideration of the quality of the security and the risk of subsequent default". *Id* at p. 651.

The only evidence regarding the prevailing market rate for loans of a similar nature was presented by F.L.B. While realistically there is no such thing as a "similar loan" comparable to a proposed payout under Chapter 12, the Court will consider the interest rates charged by F.L.B. This is because F.L.B. is solely a farm lender, and traditionally has the most favorable rates available. It is also one of, if not the, largest farm lenders in the country. Federal Land Bank's fixed rates ranged from 10.33% to 13.33% depending on the risk factor associated with the loans. The average risk loan rate is 11.83%.

While F.L.B. is, in effect, making a new loan at 100% of the collateral value, it is the view of the Court that the risk of default is somewhat less than average. This is due primarily to the fact that the farmer is relieved of virtually all of his other debts and can concentrate his efforts towards making his mortgage payments. He has developed a plan for the future with the help of a professional farm consultant. This should give further assurance of a successful reorganization of the farm and full payment to F.L.B. on its claim. Finally, the Court will provide F.L.B. with additional protection by allowing it to share in any appreciation of the value of the real property securing the claim should it be sold or should the debtors default.

In consideration of the risks as viewed by the Court, the rate of interest to be paid to F.L.B. is hereby set at eleven (11%) percent per annum.

The foregoing calculation is not to be uniformly applied in Chapter 12 proceedings before this Court, yet under the circumstances of this case, with due regard for the standards mandated in *In the Matter of Southern States Motor Inns, Inc.*, a discount rate of 11.00% is deemed the appropriate rate to assure the lienholder herein the value of the allowed amount of its secured claim upon the effective date of the plan.

■ Proceeding to the next objection of F.L.B. regarding the feasibility of the debtors' plan, this Court has reviewed the plan, testimony of witnesses, and argument of counsel in determining whether the plan offers a reasonable prospect of success and is workable. Success need not be guaranteed. (Cf. *In re Monnier Brothers*, 755 F.2d 1336, 1341 (8th Cir.1985); *In re Timber Tracts, Inc.*, 70 B.R. 773, 776 (Bankr.D. Mon.1987)). The farm management consultant appointed upon application and order testified as to the projected income under various programs to be adopted by the debtors, the economic effect of down-sizing the farming operation, and the debtors' ability to pay the F.L.B. debt. The Court thus finds the plan to be feasible with the following provisos: 1) if the debtors are unable to pay the entire payment to F.L.B. in the first year of the plan, any deficiency shall be paid along with the proposed payment in the second such year; 2) if any shortfall resulting in a deficiency is incurred the second year payment is due F.L.B., such shall constitute a default and F.L.B. shall be entitled to proceed to enforce its rights without further order of this Court; 3) upon default under the plan, or if a sale of the properties occurs within seven (7) years of the date of confirmation, the lien of F.L.B. on the realty shall secure the entire claim, to include remaining unsecured portion.

■ The remaining objections by F.L.B., the debtors' proposal to pay real estate taxes over a three year period, and the vesting of the property in the debtor free and clear are both specifically authorized within the Chapter 12 provisions and shall therefor be denied. (Cf. §§ 1225, 1227).

This Court concludes after notice and hearing:

1) the plan complies with the provisions of Chapter 12 and with the other applicable provisions of this Title;

2) any fee, charge, or amount required under Chapter 123 of Title 28, or by the plan, to be paid before confirmation, has been paid;

3) the plan has been proposed in good faith and not by any means forbidden by law;

4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this Title on such date;

5) with respect to each allowed secured claim provided for by the plan—

A) the holder of such claim has accepted the plan;

B) i) the plan provides that the holder of such claim retain the lien securing such claim; and

ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

C) the debtor surrenders the property securing such claim to such holder; and

6) the debtor will be able to make all payments under the plan and to comply with the plan.

7) with regard to allowed unsecured claims, as of the effective date of the plan—

A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

B) the plan provides that all of the debtors' projected disposable income to be received in the three-year period, or such longer period as the Court may approve under § 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Chapter 12 Plan of the debtors be, and it hereby is, confirmed consistent with the provisions of this Order.

DONE AND ORDERED.