**In re CRANE AUTOMOTIVE, INC., Debtor.**

**Bankruptcy No. 86–2528 PGH.**

United States Bankruptcy Court, W.D. Pennsylvania.

June 28, 1988.

———

Gary W. Short, Pittsburgh, Pa., for debtor.

Reed J. Davis, Pittsburgh, Pa., for First Seneca Bank.

Robert C. Edmundson, Pittsburgh, Pa., for Pennsylvania Dept. of Revenue.

Edward J. Laubach, Jr., Sp. Asst. to U.S. Atty., Pittsburgh, Pa.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

This matter came before the court on First Seneca Bank's ("First Seneca") objections to the plan of reorganization filed by Crane Automotive, Inc. (hereinafter "Crane" or "debtor"). An appropriate order confirming the plan over First Seneca's objections was entered on December 11, 1987.

This opinion constitutes this court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052, which was made applicable to this contested matter by Bankruptcy Rule 9014.

This court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. § 1334 and the General Order of Reference of the United States District Court of Pennsylvania dated October 16, 1984 entered pursuant to 28 U.S.C. § 157. This matter was a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L).

*Issue*

The objection of First Seneca raises two primary issues:

1. Does the Bankruptcy Code permit a debtor under a plan of reorganization to modify the contractual rate of interest of a secured creditor?

2. Does the Bankruptcy Code allow a Chapter 11 debtor under a plan of reorganization to pay a secured claim in deferred cash payments which extend beyond the original maturity date of the underlying obligation?

The remaining objections raised by First Seneca and certain tax creditors have been resolved, rendered moot, or are without merit and will not be discussed herein.

### Facts

On September 30, 1986, Crane filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On April 2, 1987, the debtor filed a Plan of Reorganization (the "Plan") and a Disclosure Statement. The debtor's Disclosure Statement was approved on June 1, 1987, and hearings on the debtor's Plan and First Seneca's objections were held on July 10, 1987, August 27, 1987, October 9, 1987 and December 3, 1987.

The basis for First Seneca's objections arise from the Plan's treatment of its claims. The Plan provides for two secured claims of First Seneca as follows:

"2.02 Class 2—The claim of First Seneca Bank which is based upon a bond in the amount of $95,000 and dated April 29, 1983, which is secured by a mortgage against the Imperial property and by a judgment lien against the McKees Rocks property, to the extent that such claim is an allowed, unavoidable secured claim under the Code.

2.03 Class 3—The claim of First Seneca Bank which is based upon promissory notes dated January 3, 1986, in the principal amounts of $40,652.34, and $3,657.99, respectively, which are allegedly secured by a "note No. 10–30–025030 secured with the D.S.B. No. 4659 G.D. 80 filed 6/27/83 and financing statements filed 5/3/82 No. 484445" and by a judgment lien to the extent that said claim is an allowed unavoidable secured claim under the Code.

The Plan provides the following treatment for First Seneca's Class 2 claim:

4.02 Class 2—A holder of a claim within Class 2, subject to the exceptions set forth herein at ARTICLE VII, shall retain the liens which secure such claim to the extent of the allowed amount of such claim and shall receive on account of such claim 100% of such claim by deferred cash payments as follows:

a. Commencing on the Plan Effective Date and continuing thereafter monthly on the same day of the month until thirty (30) days after the closing of the sale of the McKees Rocks property or one year after the Plan Effective Date, whichever occurs first, the Debtor shall pay interest only on such claim at an annual compound interest rate of prime rate plus two percent (prime plus 2%); and

b. Commencing thirty (30) days after the completion of the payments described above in subparagraph "a", the Debtor shall pay the balance of such claim in one hundred eighty (180) consecutive equal monthly installment payments with compound interest at the rate described above in sub-paragraph "a" until said claim is paid in full.

The Plan provides the following treatment for First Seneca's Class 3 secured claim:

4.03 Class 3—A holder of a claim within Class 3, subject to the exceptions set forth herein in ARTICLE VII, shall retain the liens which secure such claim to the extent of the allowed amount of such claim and shall receive on account of such claim one hundred percent (100%) of said claim by preferred cash payments as follows:

a. Commencing on the Plan Effective Date and continuing thereafter monthly on the same day of month until thirty (30) days after the closing of the sale of the McKees Rocks property or one year after the Plan Effective Date, whichever occurs first, the Debtor shall pay interest only on such claim at an annual compound interest rate of prime rate plus two percent (prime plus 2%); and

b. Commencing thirty (30) days after the completion of the payments described above in sub-paragraph "a", the Debtor shall pay the balance of such claim in one hundred twenty (120) consecutive equal monthly installment payments with com-

pound interest at the rate described above in sub-paragraph "a" until said claim is paid in full.

The claims themselves arise from a series of loan transactions, some of which are the subject of a pending adversary action to determine the secured status of two of First Seneca's claims. The outcome of the adversary proceeding will not, however, have an adverse impact on the feasibility of the plan.

*Discussion*

■ The issues as presented must be answered in the affirmative. The Bankruptcy Code permits a Chapter 11 debtor to modify both the contractual rate of interest of a secured claim and to pay a secured claim in deferred cash payments which extend beyond the original maturity date of the underlying obligation. Having found no cases directly addressing the specific Code sections, we set forth our reasoning here. We do note that the Third Circuit Court of Appeals has recognized, in dicta, that a Chapter 11 debtor may modify secured obligations under a plan of reorganization. *In re Roach,* 824 F.2d 1370, 1376 (3d Cir.1987).

Section 1123 specifies the requirements that a plan of reorganization must contain. Subsection (a)(5) specifically requires a plan to provide adequate means for its execution. In particular, § 1123 provides in part:

"(a) Notwithstanding any otherwise applicable non-bankruptcy law, a plan shall—

\* \* \* \* \* \*

(5) provide adequate means for the plan's implementation, such as—

\* \* \* \* \* \*

(E) satisfaction or *modification* of any *lien;*

(F) cancellation or *modification* of any indenture or similar instrument;

(G) curing or waiving of any default; [and]

(H) *extension of a maturity date or a change in an interest rate* or other term of outstanding securities ..."

11 U.S.C. § 1123(a)(5)(E)–(H) (1987) (emphasis added).

The House and Senate Reports to the Bankruptcy Reform Act of 1978 state that Section 1123 is derived from Section 216 under the Bankruptcy Act of 1898, which also permitted these forms of modification to effect a plan. *See,* HR Rep. No. 95–595, 95th Cong., 1st Sess. 407 (1977); S.Rep. No. 95–989, 95th Cong., 2d Session 119 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *See also Brooklyn Trust Co. v. Kelby,* 134 F.2d 105 (2d Cir.) *cert. den.* 319 U.S. 767, 63 S.Ct. 1330, 87 L.Ed. 1717 (1943); *Wachovia Bank and Trust Co. v. Harris (In re Cabana Club Apartments, Inc.),* 455 F.2d 841 (4th Cir.) *cert. den.* 409 U.S. 844, 93 S.Ct. 47, 34 L.Ed.2d 84 (1972).

This express Congressional authorization is further exemplified by the definitions contained in 11 U.S.C. § 101 (1987). "Indenture" is defined to include a "mortgage, deed of trust, or indenture under which there is outstanding a security, ... [or] a claim secured by a lien on any of the debtor's property." 11 U.S.C. § 101(27) (1987). "Lien" is defined very broadly to mean a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(33) (1987). And finally, "security" includes a note and a bond. 11 U.S.C. § 101(43)(A)(i) and (A)(iv) (1987). From the foregoing, it is clear that Congress intended to allow a Chapter 11 debtor to modify both the maturity date and the rate of interest on the underlying obligation in order to implement a plan of reorganization.

Several cases have addressed the permissibility of modifying a secured obligation under a plan by either reducing the interest rate, extending the maturity date, or both. *See e.g., In re White,* 36 Bankr. 199 (Bankr. D.Kan.1983). However, those cases have focused on the "cramdown" provisions of the Bankruptcy Code [§ 1129(b) ] to determine the permissibility of modifying the secured obligation. For example, in *Wachovia Bank & Trust Co. v. Harris (In re Cabana Club Apts., Inc.),* the Fourth Circuit Court of Appeals affirmed the District Court's finding that the debtor's plan was

fair, equitable, feasible and that it complied with the appropriate cramdown provision of the Bankruptcy Act. 455 F.2d 841 (4th Cir.) *cert. den.* 409 U.S. 844, 93 S.Ct. 47, 34 L.Ed.2d 84 (1972) (§ 216 of the old Act). The objecting creditor had contended that the plan improperly extended the debtor's obligation over a twenty year period. *Id* at 844. Subsequent cases have relied on the *Wachovia* case as standing for the proposition that the cramdown provisions could be utilized to modify secured obligations. *In re White,* 36 B.R. 199 (Bankr.D.Kan.1983); *In re Hollanger,* 15 B.R. 35 (Bankr.W.D. La.1981); *In re Benson,* 9 B.R. 854 (Bankr. N.D.Ill.1981); *In re Macon Uplands Venture,* 7 B.R. 293, 303 (M.D.Ga.1980). *Cf. In re O'Farrell,* 74 B.R. 421, 424 (Bankr.N.D. Fla.1987); *In re Mulnix,* 54 B.R. 481, 484 (Bankr.N.D.Iowa 1985); *In re Iverson,* 24 B.R. 227, 230 (Bankr.W.D.La.1982); *In re 750 Ave. Assocs.,* 5 B.R. Ct.Dec. 368 (Bankr.S.D.N.Y.1979); *In re KRO Assocs.,* 4 B.R. Ct.Dec. 462 (Bankr.S.D.N.Y.1978); *In re County Green Ltd. Partnership,* 3 B.R. Ct.Dec. 427 (Bankr.W.D.Va.1977); *and In re Nob Hill Apts.,* 2 B.R. Ct.Dec. 1463 (Bankr.N.D.Ga.1976).

While we agree with the result, we find the analyses misleading. Under the Bankruptcy Act, secured obligations could be modified in corporate reorganizations (Chapter X) under the auspices of Section 216(7), (9) & (10). Any modification would still be subject to the fair and equitable standard contained in Section 221(2) for purposes of confirmation. Similarly, the obligations could be modified in Real Property Arrangements by Persons Other than Corporations (Chapter XII) under the auspices of Section 461(1), (11) & (12). Such modifications under a real property arrangement were still subject to the confirmation standards contained in Section 472, a "best interests" analysis.

These reorganization and arrangement provisions of the old Bankruptcy Act under Chapters X and XII, were consolidated and amalgamated into Chapter 11 of the new Bankruptcy Code. Under the new Code, § 1123 provides the debtor with the authority to modify secured obligations in a plan, much the same as Sections 216(10) (Chapter X) and 461(12) (Chapter XII) under the old Act. All of these provisions are phrased in terms of providing adequate means for the execution of the plan. *Cf. Valente v. Savings Bank of Rockville,* 34 B.R. 362, 366 (D.Conn.1983).

■ If the debtor utilizes his power to modify an obligation over the objection of a secured creditor under § 1123, it is Section 1129(b) of the Code (Section 216(7) or 461(11) under the old Act) that enables the debtor to force the modification upon the creditor, the so-called "cramdown" provisions. Stated another way, it is only after a plan has been proposed and the claim is deemed impaired under § 1124, by reason of the modifications, that the debtor may utilize § 1129(b) to cramdown the modification on the secured creditor.

Utilizing the above analysis, we find that Crane may modify both the rate of interest and the maturity date on the secured obligations owed to First Seneca under a plan of reorganization. Consistent with the above analysis, we must analyze the modification under the cramdown provisions of Section 1129, which provides:

"(b)(1) Notwithstanding § 510(a) of this Title, if all of the applicable requirements of Sub-section (a) of this Section other than paragraph (8) are met with respect to a plan, the Court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph, if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this sub-section, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totalling at least the allowed amount of such claim, of the value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property ..."

11 U.S.C. § 1129(b)(2)(A)(i) (1987).

■ We hold that Crane's plan is fair and equitable and satisfies the requirements of § 1129(b)(1) and (2). There is no dispute that § 1129(b)(2)(A)(i)(I) has been satisfied; rather, First Seneca argues that the plan does not provide for an appropriate interest rate under § 1129(b)(2)(A)(i)(II). We rely upon and incorporate herein, to avoid repetition, the reasoning and analysis of *In re Snider Farms, Inc.*, insofar as Chief Judge Lindquist addressed the appropriate interest rate to be used for "cramdown" purposes after the effective date of the plan under § 1129(b)(2)(A)(i)(II). 83 B.R. 977 (Bankr.N.D.Ind.1988). While *Snider Farms* involves a Chapter 12 debtor, the discussion of § 1129 and the appropriate interest rate to be used thereunder, is both thorough and well-reasoned. In determining the appropriate interest rate, *Snider Farms* used the riskless rate on treasury bonds of a like maturity as a baseline or initial component for the discount rate to be used in determining whether the debtor was giving the objecting creditor present value on its allowed secured claim as of the effective date of the plan. *Id* at 998. In addition to the riskless rate, the court suggested a second component or a risk premium should be factored in, based on the risks apparent in the debtor's plan such as the quality of the security, the loan value of collateral ratio, the feasibility of the plan, including the amount of debt discharged by a confirmed plan, the length of the stretchout, and the cost, time and difficulty in liquidating the collateral. *Id* at 998. The court did not, however, confirm the debtor's plan because the interest rate proposed by the plan was insufficient to provide the creditor with the present value of its allowed secured claim. *Id.* Such is not the case at bench.

Applying the *Snider Farms* analysis, we take judicial notice of the bank prime loan rate and the riskless rate on treasury bonds on December 11, 1987 reflected in both the *Wall Street Journal* of the same date and coincidentally, as set forth in Appendix A to the *Snider Farms* opinion. 83 B.R. 977, 1001 (Bankr.N.D.Ind.1988). Crane's plan, as proposed, provides for an interest rate of 10.75% for purposes of § 1129(b)(2)(A)(i)(II). This interest rate consists of the adjusted prime rate quoted by commercial banks to large businesses plus an additional 2% to cover the risks involved. When compared to the riskless rate on treasury bonds, which is no less than 9.28% and no greater than 9.45%, there remains at least 1.3% as a cushion to cover any risks apparent in Crane's plan. As such, we find the debtor's plan sufficiently provides First Seneca with the present value of its class 2 and 3 claims. *Accord In re Loveridge Machine & Tool Co.*, 36 B.R. 159 (Bankr.D.Utah 1983).

For the foregoing reasons, this court confirmed Crane Automotive, Inc.'s Plan of Reorganization by order dated December 11, 1987.