**In re Carol B. MUZZEY, Debtor.**

**Bankruptcy No. 89–00149–FGC.**

United States Bankruptcy Court,
D. Vermont.

Aug. 15, 1991.

J. Canney, III, of Hull, Webber, Reis & Canney, Rutland, Vt., trustee.

G. Glinka, Glinka & Palmer, Cabot, Vt., for Carol B. Muzzey, debtor.

T. Taylor, of Keyser, Crowley & Meub, P.C., Rutland, Vt., for First Brandon Nat. Bank.

## MEMORANDUM OF DECISION ON OBJECTION TO DEBTOR CLAIMED EXEMPTION

FRANCIS G. CONRAD, Bankruptcy Judge.

On August 12, 1988, Debtor commenced a Chapter 12 bankruptcy proceeding, 11 U.S.C. §§ 1201, et seq.[1] Debtor's Chapter 12 plan was confirmed on August 3, 1989. Debtor converted to Chapter 7 on August 2, 1990. The instant matter[2] concerns conflicting claims between Bank and Debtor to post-petition proceeds from Debtor's interest in farmland and home (farm).

Debtor leased the farm from Vermont Land Trust (VLT). Debtor's lease with VLT contained a right of first refusal if VLT contracted to sell the property during the pendency of the lease.[3] Within the

---

1. We have subject matter jurisdiction under 28 U.S.C. § 1334(b) and the general reference to this Court under VLBR 7012, Part V of the United States District Court Rules for the District of Vermont. This is a contested matter under Rules of Practice and Procedure in Bankruptcy Rule 9014 and we determine it is core under 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. Rule 52, as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

2. In 1986, Congress enacted Chapter 12 of the Bankruptcy Code, entitled "Adjustment of Debts of a Family Farmer with Regular Annual Income." *Bankruptcy Judges, United States Trust-*

*ees and Family Farmer Bankruptcy Act of 1986,* Pub.L. No. 99–554, § 255, 100 Stat. 3105–3114 (codified as amended in various sections of 11 U.S.C. and 28 U.S.C.). Unless extended by Congress, the Family Farmer Bankruptcy Act of 1986 has a sunset date of October 1, 1993.

3. Debtor's equitable mortgage claim stems from its right of its first refusal in its lease with VLT. If VLT contracted to sell the farm during the term of the lease, then Debtor had the right of first refusal. If Debtor purchased the property under the right of first refusal, then Debtor was entitled to receive a credit toward the purchase of one-half of each $4,000 monthly rent payment made. If the right of first refusal was not exercised by Debtor, then Debtor was to receive a refund of one-half of the rent payments made.

Chapter 12 case, and prior to Debtor's confirmation, Debtor and VLT executed a Stipulation that incorporated by reference the Purchase and Sale Agreement whereby Debtor could purchase the farm from VLT. Unfortunately, Debtor could not purchase the farm.

Debtor also commenced an adversary proceeding against VLT on the theory it had an equitable mortgage interest in the farm. Debtor and VLT settled the proceeding after Debtor's Chapter 12 plan confirmation (Settlement Agreement). The Settlement Agreement required VLT to pay $25,000 to Debtor in exchange for any real property interest Debtor had in the farm. Bank objected to the settlement. We approved the Settlement Agreement subject to any interest Bank had in the $25,000.

After Debtor's conversion to Chapter 7, Debtor closed on the Settlement Agreement. The $25,000 was placed in escrow pending our resolution of conflicting claims of entitlement between Debtor and Bank.

Debtor's Schedule B–4 listed the $25,000 as exempt property,[4] i.e., proceeds derived from Debtor's homestead interest[5] in the farm that was quit-claimed to VLT. Bank and Trustee objected.[6]

Bank objected on two grounds. First, Debtor never had an equitable mortgage under the lease. Bank argues Debtor was a mere lessee because Debtor never tendered the purchase price to exercise the right of first refusal option. Moreover, Bank continues, Debtor never attained an equitable mortgage under the Purchase and Sale Agreement because the Stipulation left the issue of whether Debtor had an equitable mortgage for the Court to decide and the Court never decided the

issue upon its approval of the Settlement Agreement.

Bank's second objection claims the $25,000 is a contract right and, as such, is subject to Bank's properly perfected security interest in collateral that includes "all property, personal or otherwise, ... now owned or in existence or hereafter acquired or created including accounts and contract rights, but not limited thereto." (Security Agreement). As an add on to this right, Bank says its Security Agreement also covered proceeds and products of the collateral, and if this isn't enough, the confirmed Chapter 12 plan provided for the continuation of its security interest.

Bank, Trustee, and Debtor resolved part of their disagreement over the characterization of the $25,000 post-petition proceeds from VLT. Debtor agreed not to assert a homestead interest in the $25,000 on an equitable mortgage theory. Bank may continue to press its claim to the $25,000 based on its other claim. If Bank prevails, Bank will receive the $25,000. If Bank does not prevail, then Debtor and Trustee will split the $25,000. Lastly, Bank agreed not to appeal an adverse decision from this Court.

## ARGUMENTS OF THE PARTIES

Bank advances, and Debtor counters, two arguments why it is entitled to the $25,000.

First, Bank argues the $25,000 is subject to its pre-petition Security Agreement. Alternatively, Bank claims Debtor's equitable mortgage claim against VLT arose pre-petition and out of a lease and, as such, is a "contract right" and is within its security interest. Thus, Bank says its security interest attaches to the $25,000 under 11 U.S.C. § 552(b),[7] because the $25,000 repre-

---

Both the credit and refund were contingent upon Debtor's compliance with the terms of the lease. Debtor made five $4,000 rent payments under the lease between August, 1987 and January, 1988, and Debtor thereafter reduced rental payments to $2,000. Debtor claimed it was entitled to a $10,000 credit toward the purchase price. Thus, the $10,000 credit gave rise to Debtor's equitable mortgage claim against VLT.

**4.** 11 U.S.C. § 522.

**5.** 27 Vt.Stat.Ann. § 101.

**6.** Trustee did not submit any memoranda supporting its opposition to Debtor's claimed exemption.

**7.** 11 U.S.C. § 552(b), **Postpetition effect of security interest,** provides:

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security

sents proceeds from Debtor's pre-petition equitable mortgage claim.

Debtor counters the $25,000 is not pre-petition property; rather, it is post-petition property and is beyond the reach of Bank's pre-petition security interest in Debtor's after-acquired property under 11 U.S.C. § 552.[8] As for Bank's contract and Uniform Commercial Code argument, Debtor says its farm interest, whether an equitable mortgage or a leasehold, is real property and the $25,000 is proceeds from Debtor's real property interest. Thus, Debtor argues Bank's security interest does not include the $25,000 because Vermont's Uniform Commercial Code Article 9 does not apply to real property.

Bank's second argument assumes *arguendo* that if its pre-petition security interest does not attach to the $25,000, nevertheless, Bank is still secured because it was provided with a security interest through Debtor's confirmed Chapter 12 plan. Bank says Debtor's Chapter 12 plan provided

Bank's indebtedness would be secured by its security interest "in all the Debtor's non-exempt assets."

Debtor counters Bank's pre-petition security interest was not revived by Debtor's confirmed Chapter 12 plan. Moreover, even assuming *arguendo* it was possible to revive Bank's pre-petition security interest after its abrogation under § 552(a), Debtor argues its Chapter 12 plan acknowledged Bank's lien would only attach to non-exempt property, and the $25,000 is exempt property.[9]

Alternatively, Debtor argues the Chapter 12 plan no longer binds Debtor and Bank upon Debtor's conversion to Chapter 7 because the commencement date of the converted Chapter 7 case becomes the same date as that of the Chapter 12 case under 11 U.S.C. § 348(a).[10] Under 11 U.S.C. § 348(d),[11] Debtor says a claim that arises after the order for relief but before conversion "shall be treated for all purposes as if such claim had arisen immediately before

---

agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

**8.** 11 U.S.C. § 552(a), **Postpetition effect of security interest**, provides:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the continuation of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commence-

ment of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

**9.** Bank reminds us the parties had stipulated they would not raise the issue of whether the $25,000 constitutes proceeds from Debtor's homestead. Thus, we do not reach the issue.

**10.** 11 U.S.C. § 348(a), **Effect of conversion**, provides:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

**11.** 11 U.S.C. § 348(d), **Effect of conversion**, provides:

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1307, or 1208 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

the date of the filing of the petition." Debtor argues that all property acquired after the Chapter 12 was filed becomes Chapter 7 post-petition property. Debtor concludes that the effect of § 552(a) in voiding Bank's security interest in Debtor's after-acquired right to the $25,000 is not altered by Debtor's confirmed but unconsummated Chapter 12 plan.

Bank's reply takes a different view of the effect of Debtor's confirmation and conversion on its post-petition but pre-conversion security interest. Bank argues its post-petition security interest is not implicated by § 552. Moreover, Bank argues its post-petition security interest claim survives upon conversion to Chapter 7 under § 348(d).

Debtor's surrejoinder is that whatever post-petition status Bank may have had from Debtor's confirmed but unconsummated Chapter 12 plan, Bank lost it upon Debtor's conversion to Chapter 7. Bank simply retained its pre-petition lien status upon conversion. Assuming *arguendo* Bank's claim arose post-petition, its claim is treated as if it arose immediately before the date of the order of relief of the original Chapter 12 under §§ 348(d) and 348(a).

## ISSUES PRESENTED

1. Whether, after a case has been converted to Chapter 7, Bank's pre-petition security interest in contract rights with an after-acquired property clause encompasses post-petition proceeds from Debtor's real property interest?

2. Whether proceeds from the post-petition Settlement Agreement come within the after-acquired property clause of a security interest established post-petition by Debtor's con-

firmed but unconsummated Chapter 12 plan?

## DISCUSSION

Section 552(a) provides a general rule that property acquired post-petition by the estate or by the debtor is not subject to any lien resulting from any pre-petition security agreement. Section 552's legislative history reveals Congress intended § 552 would invalidate after-acquired property clauses, but not security interests in the property of pre-petition collateral. The Senate Report (Reform Act of 1978) of § 552's legislative history explains "[s]ubsection (b) provides an important exception consistent with the (UCC). If the security agreement [12] extends to proceeds ... then the proceeds would continue to be subject to the security interest pursuant to the terms of the security agreement and provisions of applicable law...." S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877 reprinted in 4 *Norton Bankruptcy Law and Practice*, page 520 (1991 Supp.) (footnote ours).

The House Report (Reform Act of 1978) of § 552's legislative history expresses that "proceeds" "is not limited to the technical definition of that term in the UCC, but covers any property into which property subject to the security interest [13] is converted." H.R.Rep. No. 595, 95th Cong., 1st Sess. 376–377 (1977), U.S.Code Cong. & Admin.News 1978, pp. 6332–33 reprinted in 4 *Norton Bankruptcy Law and Practice*, page 519 (1991 Supp.) (emphasis and footnote ours). While the House Report *supra*, suggests an expansive definition for the term "proceeds" that may reach beyond applicable UCC, it also expresses a requirement that the subject property be "converted." The "American Heritage Dic-

---

**12.** 11 U.S.C. § 101(50) provides: "'security agreement' means agreement that creates or provides for a security interest."

**13.** The House Report (Reform Act of 1978) of § 552's legislative history suggests the definition of the term "security interest" is not limited to any particular State's UCC, but also "applies to all security interests as defined in section 101 of the bankruptcy code, not only to UCC security

interests." *Id. Accord*, Senate Report (Reform Act of 1978) ("It applies to all security interests as defined in section 101(37) (presently § 101(45)) of the bankruptcy code, not only to UCC security interests." S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978)), U.S.Code Cong. & Admin.News 1978, p. 5877. 11 U.S.C. § 101(51) provides: "'security interest' means lien created by agreement."

tionary" defines "convert" in part as: "To change into another form, substance, state, or product; transform: **convert water into ice.**" *Id.,* (2d Ed.1982) (emphasis in original). Thus, it appears § 552's legislative history supports Debtor's position the $25,-000 must have been converted from collateral that was subject to Bank's Security Agreement before it would become "proceeds."

Bank's Security Agreement extends to proceeds. This fact is not in dispute. What remains for our determination is the extent of the exception under § 552(b)'s "applicable nonbankruptcy law." Our query then is: Does Vermont's UCC recognize as "proceeds" certain post-petition settlement funds that were realized by Debtor's quit-claim of its farm interest, which is without doubt from a real property interest?

Applicable nonbankruptcy law is 9A Vt.Stat.Ann. § 9–306, "Proceeds"; secured party's rights on disposition of collateral. It provides in pertinent parts:

(1) **'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of.** The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are 'cash proceeds'. All other proceeds are 'noncash proceeds'.

(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collateral received by the debtor.

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless

(a) a filed financing statement covering the original collateral also covers proceeds; or

(b) the security interest in the proceeds is perfected before the expiration of the ten day period.

*Id.,* (emphasis supplied).

9A Vt.Stat.Ann. § 9–105(3), Definitions and index of definitions, requires we defer to Vermont's Article 2 Sales for the definition of "sale" for Article 9 Secured Transactions purposes. 9A Vt.Stat.Ann. § 2–106(1) provides:

(1) ... A 'sale' consists in the passing of title from the seller to the buyer for a price (§ 2–401). A 'present sale' means a sale which is accomplished by the making of the contract.

*Id. See, Cross–Abbott Company v. Howard's, Inc.,* 124 Vt. 439, 442, 207 A.2d 134 (1965) ("A sale is a contract whereby the ownership of property is transferred from one person to another for a consideration.... A sale is defined in the Uniform Sales Act, 9 V.S.A. § 1501(b), to be—'A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called a price.' " (citations omitted)).

9A Vt.Stat.Ann. § 2–401, Passing of title; reservation for security; limited application of this section, provides:

Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provisions refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title become material the following rules apply:

(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (§ 2–501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a

security interest. Subject to these provisions and to the provisions of the article on Secured Transactions (article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place....

*Id.*

In turn, 9A Vt.Stat.Ann. § 2–501, Insurable interest in goods; manner of identification of goods, provides:

(1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are non-conforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

(a) When the contract is made if it is for sale of goods already existing and identified....

(2) The seller retains an insurable interest in goods so long as title to or any security interest in the goods remains in him and where the identification is by the seller alone he may until default or insolvency or notification to the buyer that the identification is final substitute other goods for those identified.

*Id.*

Anderson has this observation with respect to the UCC's use of the phrase "sold, exchanged, collected or otherwise disposed of:"

§ 9–306:12. **Necessity of sale.**

In order for the sale provisions of UCC § 9–306 to be operative, it is necessary that there be a transaction with respect to the collateral that is a 'sale, exchange, collection, or other disposition of the collateral or proceeds.' Whether there has been a sale for the purpose of Article 9 is determined by the definition of sale in Article 2. The Code (UCC) does not define the term 'exchange' and therefore its prior meaning applies under which the difference between it and a sale is 'purely technical.'

. . . . .

§ 9–306:13. **Definition of Proceeds.**

The term 'proceeds' is to be given a liberal construction. It includes anything and everything that is received when collateral or proceeds of collateral are sold or disposed of in any way, and goods that are purchased with the original proceeds from the collateral.

9 *Anderson on the Uniform Commercial Code*, § 9–306:12, pages 142–143 (3d Ed. Supp.1990) (footnotes omitted) (parentheticals supplied).

Uniform Commercial Code, 9A Vt.Stat. Ann. § 9–102, Policy and scope of article, provides:

(1) Except as otherwise provided ... in section 9–104 on excluded transactions, this article applies so far as concerns any personal property and fixtures within the jurisdiction of this state

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts or contract rights; and also

(b) to any sale of accounts, contract rights or chattel paper.

*Id.* Uniform Laws Comment # 4 to § 9–102(1), provides:

4. An illustration of subsection (3) is as follows:

The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, this Arti-

cle is applicable to the security interest thus created in the note and the mortgage. Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre, requires further action (such as recording an assignment of the mortgagee's interest) is left to real estate law. See Section 9–104(j).

*Id.* Uniform Commercial Code, 9A Vt.Stat. Ann. § 9–104(j), Transactions excluded from article, provides:

> This article does not apply
>
> (j) ... to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder....

*Id.* Uniform Laws Comment # 2 to § 9–104(j) provides in part:

> [T]he Article applies only to security interests in personal property. The exclusion ... of leases and other interests in or liens on real estate by paragraph (j) merely reiterates the limitations on coverage already made explicit in Section 9–102(3). See Comment 4 to that section.

 We hold, based on an analysis of Vermont law that the collateral subject to Bank's Security Agreement did not include proceeds from Debtor's real property interest in the farm and the $25,000, post-petition proceeds from Debtor's farm remain free and clear of Bank's pre-petition Security Agreement. 11 U.S.C. § 552(b). *See, In re Wallman,* 71 B.R. 125, 128 (Bkrtcy. D.S.D.1987) ("The 'proceeds' exception in subsection (b) **only** refers to proceeds generated by prepetition collateral, **not** proceeds of after-acquired property.... Proceeds of collateral may be held to be secured by prepetition security interest only if the collateral which produces the proceeds was acquired by the debtor prepetition."). *Accord, Craner v. Marine Midland Bank, N.A. (In re Craner),* 110 B.R. 111, 119 (Bkrtcy.N.D.N.Y.1988) rev'd on other grounds, *Craner v. Marine Midland Bank, N.A. (In re Craner),* 110 B.R. 124 (N.D.N.Y.1989); *In re Big Hook Land &*

*Cattle Co.,* 81 B.R. 1001, 1003 (Bkrtcy. D.Mont.1988).

 The last issue to be decided is whether the $25,000 proceeds from the post-petition Settlement Agreement comes within the after-acquired property clause of a security interest established post-petition by Debtor's confirmed but unconsummated Chapter 12 plan? The answer is no for two reasons.

 First, Debtor was converted to Chapter 7 and the unconsummated Chapter 12 plan no longer binds Debtor and Bank.

Second, assuming *arguendo* Bank had a post-petition-pre-conversion claim, § 348 requires all claims [14] are to be treated as if they arose immediately prior to the filing of the Chapter 12 and all property acquired after the Chapter 12 was filed becomes post-Chapter 7 petition property. Upon Debtor's conversion to Chapter 7, the commencement date of the converted Chapter 7 case becomes the same date as that of the Chapter 12 case under 11 U.S.C. § 348(a). Under 11 U.S.C. § 348(d), a claim [15] that arises after the order for relief but before conversion "shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." *Id.* All property acquired after the Chapter 12 was filed becomes Chapter 7 post-petition property. Thus, the effect of § 552(a) in voiding Bank's security interest in Debtor's after-acquired right to the $25,000 is not altered by Debtor's confirmed but unconsummated Chapter 12 plan.

For the reasons stated above, Bank's motion is denied. Debtor to settle an order.

---

**14.** Administrative expense claims as specified by 11 U.S.C. § 503(b), however, are expressly excepted from the operation of § 348(d). Such administrative expense claims continue to have first priority in distribution as specified by § 507(a).

**15.** *See,* caveat in footnote 14, *supra.*