Robert W. BENSON, et al., Appellants,

v.

EMPIRE STATE BANK, Respondent.

No. C8–93–2045.

Court of Appeals of Minnesota.

May 3, 1994.

Review Denied June 29, 1994.

Lawrence H. Crosby, Crosby & Associates, St. Paul, for appellants.

James R. Anderson, Marshall, for respondent.

Considered and decided by AMUNDSON, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

AMUNDSON, Judge.

Appellants Robert and Charlette Benson argue that the district court erred by (1) allowing the bank to reinstate the original mortgage amount after they defaulted on the Chapter 12 bankruptcy plan; (2) finding that the mortgagee had provided a sufficient accounting of payments made by the debtor under the Chapter 12 bankruptcy plan; and (3) permitting attorney fees beyond those allowed under Minnesota foreclosure law. We affirm.

## FACTS

The Bensons farmed in rural Yellow Medicine County for "virtually all of their adult lives." In June 1986, the Bensons executed a promissory note and real estate mortgage to Empire State Bank (bank) in the amount of $176,000. Due to tremendous market pressure and a decrease in the value of their real estate, the Bensons voluntarily filed a Chapter 12 bankruptcy petition in June 1988.

The bankruptcy court ultimately confirmed the Bensons' third modified plan of reorganization. The plan treated the bank's claim as follows:

> On the real estate note dated June 5, 1986 in the original principal amount of approximately $202,273.00 (sic) as of June 6, 1988, this Class will be paid $121,000.00 with 10% simple interest per annum, amortized over 30 years and ballooned in 7 years from the date of first payment with interest accruing from December 1, 1988, with a payment of approximately $12,784.42 per year * * *. This class shall also be paid with respect to this note, $7,500.00 by exe-

cution and turn over of M.C.P. stock at or about the time of the confirmation of this Plan. This class shall also be paid, with respect to this debt, $16,242.96 by way of a check for proceeds of 1987 soy bean sales and a check of $539.42 by way of a check for proceeds of 1987 soy bean sales—to be turned over at or about the date of the confirmation of this Plan. Debtors shall also release to Empire State Bank all stored grains belonging to Debtors. This class shall also be paid, with respect to this debt, $12,000.00 comprising the remaining custom rent due Debtors from Fred Benson, Debtors' father, not later than November 31, 1988 (sic). This class shall also be paid, with respect to this debt, any and all federal crop insurance by way of a turn over to the Empire State Bank of said amounts at the time they are received.

The Bensons continued their farming operation under the Chapter 12 plan, but the record indicates that they missed two payments (one in April 1990 and one in April 1991). Unable to continue making the plan payments, the Bensons converted their Chapter 12 bankruptcy to Chapter 7. Several weeks later, the bankruptcy court granted the bank relief from the automatic stay to enforce its security interest against the Bensons' real property.

In August 1991, the Bensons' debt was discharged under Chapter 7. The bank initiated foreclosure by advertisement proceedings in September 1991. The bank claimed that, because the Bensons defaulted on the terms of the Chapter 12 plan, the bank was not obligated to the terms of the plan. The bank "reconstructed" the real estate note, by returning to the original loan amount of $176,000. After crediting payments made by the Bensons and the Chapter 12 trustee and recomputing interest on the note,[1] the bank declared an amount due and owing on the property of $164,321. The bank then "purchased" the property for this amount at the sheriff's sale on October 23, 1991.

Just before the foreclosure sale, the Bensons commenced an action against the bank to enjoin the sale of their farmland or, alternatively, to find the sale null and void. The Bensons also requested a complete accounting from the bank with respect to payments made on their mortgage note from 1986 through 1991.

When the matter finally came to trial, three issues were before the court. First, the parties stipulated to expand the scope of relief before the court; specifically, they agreed to address whether any surplus arose from the bank's foreclosure sale and, if so, whether the Bensons were entitled to that surplus under Minn.Stat. § 580.10 (1990). Second, the Bensons argued that the bank still had not provided an accurate financial accounting, and third, the Bensons contended that the bank violated Minn.Stat. § 582.01 (1990) by claiming unauthorized attorney fees.

The district court found that no surplus existed from the foreclosure sale, that the bank had presented a "full accounting," and that the bank owed nothing more to the Bensons. The Bensons appeal from the court's final judgment and from the order denying a new trial and/or amended findings.

### ISSUES

I. Does confirmation of a Chapter 12 bankruptcy plan bind the debtors and creditors to the terms of the plan even after the debtors convert to a Chapter 7?

II. Did the district court err in finding that the bank had provided a "full accounting" where the bank offered no contemporaneous records, no expert witness, and no formal audit?

III. Did the bank claim attorney fees beyond those allowed by Minnesota foreclosure law?

### ANALYSIS

I.

A. *Standard of Review* (Application of the Bankruptcy Code)

■ Whether a Chapter 12 bankruptcy plan has a permanent, binding effect on the

---

1. The sum of payments received by the bank under the Chapter 12 plan through the Chapter 12 Trustee amounted to over $61,000. The 10% interest rate on the original note was the same as the interest rate under the Chapter 12 plan.

debtor and creditors presents a question of law. "On appeal, this court need not defer to the trial court's conclusion when reviewing questions of law." *County of Lake v. Courtney*, 451 N.W.2d 338, 340 (Minn.App.1990), *pet. for rev. denied* (Minn. Apr. 13, 1990).

### B.  *Jurisdiction*

Resolution of the first issue requires this court to interpret and to apply federal bankruptcy law.  Bankruptcy courts have jurisdiction over

> any or all cases under title 11 and any or all core proceedings arising under title 11 or arising in or related to a case under title 11.

*In re Gallucci*, 931 F.2d 738, 741 (11th Cir. 1991) (quoting 28 U.S.C. § 157(a) (1988)). Bankruptcy courts, however, "may not entertain cases involving noncore, unrelated matters." *Id.*

■ Whether the bank provided an adequate accounting to the Bensons, whether any surplus existed from the foreclosure sale, and whether the bank improperly computed attorney fees are issues involving Minnesota law and are thus noncore matters, unrelated to the bankruptcy proceeding. *See In re Howe*, 913 F.2d 1138, 1142 (5th Cir.1990) ("[A] [federal] district court must abstain from hearing a non-core, related matter if the action can be timely adjudicated in state court."); *see also Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

The Bensons' appeal involves their property interest vis a vis Minnesota foreclosure law. *See* Minn.Stat. §§ 580.01–.30 (1990). A review of applicable bankruptcy provisions does not demonstrate any countervailing federal interest requiring this case to be decided by the federal courts.  Thus, the issues involved in this appeal are within this court's purview.

### C.  *Applicable Bankruptcy Law*

1.  Effect of Confirmation of Bensons' Chapter 12 Plan

■ The Bensons rely on section 1227 of the bankruptcy code for support that, upon confirmation by the bankruptcy court of the Chapter 12 plan, the bank was bound to the terms of the plan.  Section 1227 provides:

> (a) [T]he provisions of a confirmed plan bind the debtor, each creditor, each equity security holder, and each general partner in the debtor, * * * whether or not such creditor * * * has objected to, has accepted, or has rejected the plan.
>
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

11 U.S.C. § 1227 (1988).  Confirmation of a Chapter 12 plan binds the debtor and the creditor and imposes a stay of action against codebtors.  This protection applies only as long as the debtor makes payments according to the plan or until the plan is closed, dismissed, or converted to a case under Chapter 7 of this title.  *See* 11 U.S.C. §§ 1201(a)(2), 1228(a) (1988); *First Federal Sav. & Loan Assoc. v. Hysten*, 18 Kan. App.2d 11, 846 P.2d 261, 263 (1993) ("The res judicata effect of confirmation may be eliminated only if confirmation is revoked or if the case is later dismissed or converted to another chapter.").

2.  Discharge of the Debt Under Chapter 12

■ A discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability.  * * * The debt still exist, however, and can be collected from any other entity that might be liable.

*In re Lembke*, 93 B.R. 701, 702 (Bankr. D.N.D.1988).  Unlike Chapter 11 reorganization,[2] a Chapter 12 discharge is contingent

---

**2.** Under Chapter 11, confirmation of a chapter 11 plan results in a discharge of the debtor from prepetition unsecured debts. *See* 11 U.S.C. § 1141 (1988).  Under Chapter 12, the debt is discharged only after the debtor has completed the plan. *See* 11 U.S.C. § 1228(a).

upon the debtor's performance of the plan. The Code provides:

> As soon as practicable after completion by the debtor of all payments under the plan, * * * the court shall grant the debtor a discharge of all debts provided for by the plan.

11 U.S.C. § 1228(a) (1988). The binding effect of confirmation in Chapter 12 continues only as long as the debtor makes payments under the plan. Once the plan is converted to Chapter 7, however, the unconsummated Chapter 12 plan no longer binds the debtors. *In re Muzzey*, 134 B.R. 800, 807 (Bankr.D.Vt. 1991). Rather the effect of the plan is

> subject to defeasance if the debtor fails to obtain a discharge. If discharge is denied, claims against the debtor will be discharged only to the extent of payments actually received by the creditor.

5 *Collier on Bankruptcy* 1227–3 (Lawrence P. King ed., 15th ed. 1993).

■ The Bensons argue that the bank should not have "reconstructed" the real estate note, using the $176,000 original mortgage amount. Rather, the Bensons want the starting balance to be the $121,000 figure as set forth in the Chapter 12 plan.

The Bensons' argument fails for two reasons: first, confirmation of the Chapter 12 plan bound the bank to accepting the amount of $121,000 only as long as the Bensons complied with the Chapter 12 plan. Second, the Bensons' debt to the bank was not discharged. When

> payments under a [Chapter 12] plan are not completed, and the unsecured debt is not discharged, a secured creditor may foreclose on its original collateral to the extent of the entire debt secured by the mortgage, not just the secured portion.

*In re Rott*, 73 B.R. 366, 374 (Bankr.D.N.D. 1987); *See Farm Credit Bank v. Maberry*, 498 N.W.2d 210, 212 (S.D.1993).

■ The Bensons also contend that the Chapter 12 plan functioned like a novation. This theory fails too because a novation requires that a new contract take the place of and extinguish the previous note and mortgage balance. *See* Black's Law Dictionary 959 (5th ed. 1979). Because the Bensons'

debt was not discharged under the Chapter 12 plan, the debt was not "extinguished." The Bensons rely on *In re Coleman*, 104 B.R. 338, 344 (Bankr.D.Mont.1989), to support the notion that the "preconfirmation debt is 'replaced' with a new indebtedness as provided in the confirmed plan." While the *Coleman* court correctly paraphrased the applicable bankruptcy provision, this holding is not applicable to the Bensons because the *Coleman* facts did not involve a debtor who had defaulted from a reorganization plan or a debtor who converted from one bankruptcy chapter to another.

In sum, the bankruptcy code does not bind creditors to the terms of a Chapter 12 reorganization plan after the debtor has defaulted and converted to Chapter 7. The bank was entitled to retain its "original" lien amount on the property. *See Maberry*, 498 N.W.2d at 212 (section 1225(a)(5)(B)(i) requires that the original lien be retained, not *a* lien).

## II.

A district court's "findings of fact will be reversed only if, upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made." *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn.1987). A district court's findings of fact "shall not be set aside unless clearly erroneous." Minn.R.Civ.P. 52.01. Clearly erroneous means "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power Co. v. Lyon Food Prods.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975). In actions on accounts, "the burden is upon [the appellant] to show that there was no substantial evidence reasonably tending to sustain the trial court's findings as to the amount due." *H.F. Shepherdson Co. v. Central Fire Ins.*, 220 Minn. 401, 409, 19 N.W.2d 772, 776 (1945).

■ Neither party disputed that the bank's records reflected all payments made by the Bensons and the Chapter 12 trustee. Except to argue that the starting balance should have been $121,000 and that an expert witness should have verified the bank's fig-

ures, the Bensons did not challenge the mechanical calculation of principal and interest payments. At oral argument, the Bensons' attorney conceded that, assuming a starting balance of $176,000, the bank's calculations were within "a couple hundred dollars" of being correct.

On review of the record, we conclude that the district court's findings were reasonably supported by the evidence as a whole.

### III.

The final issue is whether the bank claimed attorney fees beyond those allowed by Minnesota foreclosure law. Under Minnesota law:

> The mortgagor may, in the mortgage, covenant to pay or authorize the mortgagee to retain an attorney's fee in case of foreclosure; but such fees in case of foreclosure by advertisement shall not exceed the following amounts, and any provision for fees in excess thereof shall be void to the extent of the excess.

Minn.Stat. § 582.01 (1990).

Here, the disputed fees did not accrue as a result of the foreclosure, and the amounts recoverable are not limited by the statute. Rather the fees at issue were incurred while defending the bank's position during the bankruptcy proceedings from December 1988 through July 1991. Because the Bensons' real estate note provides for payment of attorney fees related to collection of the note, the bank was entitled to these fees.

### DECISION

Confirmation of a Chapter 12 bankruptcy plan does not bind the parties to the terms of the plan where the debtors have not received a discharge but converted to Chapter 7. Thus, the bank was entitled to restore the original mortgage amount.

**Affirmed.**