**MERCER SAVINGS BANK, Appellee,**

v.

**FULLENKAMP, Appellant.**

[Cite as *Mercer Sav. Bank v. Fullenkamp* (1996), 116 Ohio App.3d 647.]

Court of Appeals of Ohio,
Third District, Mercer County.

No. 10-96-07.

Decided Dec. 18, 1996.

**648**

*Purdy, Lammers & Schiavone* and *Thomas D. Lammers,* for appellee.

*Hatcher, Diller, Rice & Beebe* and *Steven L. Diller,* for appellant.

HADLEY, Presiding Judge.

Martin Fullenkamp, appellant, is appealing the Mercer County Court of Common Pleas judgment in favor of Mercer Savings Bank ("Mercer"), in the amount of $354,865.74 [1] plus interest at the rate of fourteen percent per annum from December 15, 1994. [2] Mercer's claims were secured by mortgages on property located in Mercer and Darke Counties.

---

1. This amount represents the $316,504.74 appellant owed Mercer prior to his default under his bankruptcy reorganization plan plus an additional $38,361 in postpetition interest.

2. The date of appellant's default under his Chapter 12 bankruptcy plan.

In October 1983, appellant executed a promissory note with Mercer for the sum of $215,000 plus interest at the rate of fourteen percent per annum. In order to secure the promissory note, appellant executed and delivered a mortgage deed to Mercer.[3]

On November 28, 1983, appellant again executed and delivered a promissory note to Mercer for the sum of $122,748.12 plus interest at a rate of fourteen percent per annum. In order to secure the promissory note, appellant executed and delivered a mortgage deed to Mercer.[4]

Appellant failed to pay either the promissory notes or the interest, and subsequently, the Mercer County Court of Common Pleas granted summary judgment on February 13, 1987 in favor of Mercer. Pursuant to that judgment, appellant was to pay Mercer the amount owed[5] within three days of the judgment or his mortgages with Mercer would be foreclosed and the security sold free and clear of any lien, claim, or interest of both parties.

Two months later, on April 17, 1987, appellant filed a Chapter 12[6] Bankruptcy petition in the United States Bankruptcy Court for the Northern District of Ohio, Western Division. The bankruptcy court stayed the proceedings in the court below.

On May 9, 1988, the bankruptcy court approved a reorganization plan[7] developed by appellant in which appellant agreed to pay Mercer the amounts he owed at a rate of ten percent interest per annum[8] beginning March 10, 1988,[9] then again on December 15, 1988, and on the fifteenth day of December each

---

3. The mortgage was for property owned by appellant which was located in Mercer County. Mercer duly filed and recorded the mortgage on October 14, 1983.

4. This mortgage was duly filed and recorded on December 2, 1983.

5. A total of $352,135.44 plus interest at a rate of fourteen percent per annum. This amount represents the total of two counts. The first count of Mercer's complaint was for $229,387.32, and the second count was for $122,748.12.

6. Chapter 12 of the United States Bankruptcy Code was enacted in November 26, 1986 to provide family farmers with regular annual income to stay in possession of the farm while obtaining court approval of a debt readjustment plan. Chapter 12 combines elements of Chapter 11 reorganizations and Chapter 13 Wage Earner Plans with a number of provisions unique to farm bankruptcies.

7. At the time the plan was approved, Mercer's judgment balance had risen to approximately $419,235, but the plan set appellant's claim at $380,874.00—a difference of $38,361.

8. Appellant was to pay annual installments of $35,629.26.

9. Although the plan was not confirmed by the bankruptcy court until May, the first payment under the plan was to have commenced two months earlier.

year thereafter. The balance of the debt was due and payable in full by way of a balloon payment on or before December 15, 1994.[10]

On March 17, 1995, appellant obtained an order discharging the debtor after completion of the Chapter 12 plan. However, appellant had yet to pay the balance owed to Mercer under the terms of his reorganization plan.[11] Under the terms of his discharge, Mercer's secured claims were excluded from the effects of the discharge pursuant to Section 1222(b)(5), (b)(9), and (b)(10), Title 11, U.S.Code.

On May 15, 1995, Mercer filed a motion requesting the Mercer County Court of Common Pleas to determine the amount of debt owed to Mercer by appellant prior to the ordering of a judicial sale. On August 3, 1995, the court reinstated Mercer's original judgment in the underlying foreclosure action and concluded that the interest owed should be calculated at the original fourteen percent rate.[12] It is from this judgment that appellant is appealing.

### Assignment of Error No. 1

"The trial court erred in determining the amount due to Mercer by inclusion of postpetition interest not allowed by the plan and which was discharged."

■ Under the bankruptcy code, the filing of a bankruptcy petition operates as an automatic stay of certain activities. Section 362(a), Title 11, U.S.Code. The stay includes a stay of enforcement against the debtor of any judgment obtained before the commencement of the debtor's bankruptcy case. Section 362(a)(2), Title 11, U.S.Code; *Moran v. Johns–Manville Sales Corp.* (N.D.Ohio 1983), 28 B.R. 376. Therefore, in the instant case, Mercer's judgment for $352,135.44 plus interest at a rate of fourteen percent per annum was stayed upon appellant's filing bankruptcy on April 17, 1987.

■ Nevertheless, courts have held that a debtor's default in making payments to a creditor constitutes cause for relief from the automatic stay. *In re Panas* (E.D.Pa. 1986), 63 B.R. 637; *In re Bosteder* (S.D.Ohio 1986), 59 B.R. 878. Here, appellant defaulted on his payment to Mercer when he failed to make the final balloon payment by December 15, 1994. Therefore, we believe that appellant's

---

**10.** Under the plan, the amount due from appellant on December 15, 1994 was $316,504.74.

**11.** Appellant had made the payments plus the interest during the five years of the plan, reducing the amount owed to $316,504.74. That amount was due in full on December 15, 1994 and had not been paid as of March 17, 1995.

**12.** The court also awarded Mercer $38,361 plus fourteen percent interest on that amount as well. The $38,361 was the difference in the amount owed to Mercer at the time of the reorganization plan and the amount set by the plan.

default on December 15, 1994 resulted in the reinstatement of the trial court's original judgment against him.

Regardless of any resulting default, appellant contends that both parties were bound to appellant's Chapter 12 reorganization plan, in which appellant was to repay $380,874 with simple interest at ten percent.[13] Consequently, appellant maintains that the trial court erred in determining that appellant now owes Mercer $419,235 [14] as a result of his default. However, we find this argument to be without merit.

▮ Normally the provisions of a confirmed bankruptcy plan binds the debtor and all creditors. Section 1227(a), Title 11, U.S.Code. However, when a debtor defaults on his own plan, it would be unfair to allow him to benefit from his own default when he created the plan. Further, once a debtor defaults, the bankruptcy code does not bind creditors to the terms of a Chapter 12 reorganization plan, and Mercer was therefore entitled to retain its original lien amount on the property once appellant defaulted and, consequently, breached his agreement with Mercer. See *Benson v. Empire State Bank* (Minn.App.1994), 516 N.W.2d 550, 554.[15]

Moreover, the United States Court of Appeals for the Sixth Circuit has held that postpetition interest is allowable as a compensatory claim for nonconsensual [16] lienholders. *In re Brentwood Outpatient, Ltd., Debtor* (Dec. 13, 1994), C.A.6, Nos. 93–5484 and 5609, unreported. See, also, *United States v. Ron Pair Ent.* (1989), 489 U.S. 235, 241–242, 109 S.Ct. 1026, 1030–1031, 103 L.Ed.2d 290, 298–299 (holding that Section 506[b] of the bankruptcy code provides for postpetition interest on oversecured claims whether they arise by operation of law or under an agreement).

▮ In the instant case, Mercer obtained a judgment against appellant prior to appellant's filing bankruptcy. Although appellant filed his bankruptcy petition on April 17, 1987, his reorganization plan was not confirmed by the bankruptcy court until May 9, 1988. During this time, interest in the amount of $38,361 had accrued on Mercer's prior trial court judgment. Despite this accrual of interest,

---

13. At the time of his default, appellant owed $316,504.74 under the plan.

14. This amount represents the addition of $38,361 in interest that accrued after the filing of the bankruptcy proceeding until the reorganization plan was confirmed by the bankruptcy court to the original $380,874 judgment.

15. Had appellant not defaulted under the confirmation plan, Mercer would have been estopped from enforcing any amount greater than the agreed $380,874.

16. "Nonconsensual" as used here means a claim that arises without a specific agreement such as a judgment lien resulting from litigation.

there was no inclusion of that interest in appellant's reorganization plan. However, once appellant defaulted, neither party was bound to the reorganization plan. Therefore, Mercer, as compensation for appellant's default, was entitled to the additional $38,361 in postpetition interest on its original judgment against appellant despite the lack of agreement between both parties regarding such interest in the event of default.

Finally, appellant argues that once his bankruptcy case was discharged,[17] Mercer was prevented from collecting any amount greater than that agreed to in the plan.[18] However, a discharge in bankruptcy, in and of itself, does not extinguish valid liens on the property of a debtor. *In re Arevalo* (D.N.J.1992), 142 B.R. 111, 112; *Estate of Lellock v. Prudential Ins. Co. of Am.* (C.A.3, 1987), 811 F.2d 186, 189. See, also, *In re Bursee* (N.D.Ohio 1992), 142 B.R. 167, 168.

In the instant case, appellant's Chapter 12 discharge order specifically states that the debtor is discharged from all debts provided for by the plan except any debts provided for under Section 1222(b)(5), (b)(9), or (b)(10), Title 11, U.S.Code. Mercer argues that because its claim against appellant was provided for under Section 1222(b)(5),[19] its original claim was not discharged, and therefore, it was not barred from pursuing its claim in state court and collecting postpetition interest on appellant's debt.

We agree with Mercer that its original claim against appellant survived the discharge. Until appellant defaulted on December 15, 1994, Mercer was not entitled to the postpetition interest, as it was bound to the reorganization plan it had entered into with appellant. However, once appellant defaulted, Mercer was no longer bound to the terms of the plan and, therefore, could seek additional postpetition interest in the state court regardless of the subsequent discharge of appellant's unsecured claims.[20]

We further hold that the trial court did not abuse its discretion in awarding Mercer the additional $38,361 in postpetition interest. Using equity principles, the trial court found that, in defaulting, appellant had lost the benefit of his

---

17. On March 17, 1995, the bankruptcy court entered its order of final discharge, and the bankruptcy proceedings terminated.

18. At the time of the discharge, the amount owed under the plan was $316,504.74 plus interest on that claim due to appellant's default on December 15, 1994.

19. That section provides that payments may be maintained while the case is pending on "any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

20. Mercer's original judgment against appellant was a protected, nonconsensual lien.

bargain and, therefore, Mercer should be awarded the postpetition interest that had not been included in the plan. We find that reasoning to be sound.

Accordingly, for the foregoing reasons, we find appellant's first assignment of error not well taken, and we overrule it.

### Assignment of Error No. 2

"The trial court erred in determining the amount due to Mercer by failing to establish the proper interest rate accruing subsequent to the termination of the Chapter 12."

Appellant maintains that although he defaulted on his payment to Mercer under the bankruptcy plan, he should still be entitled to the plan's ten percent interest rate. In support of his contention, appellant advances the argument that a default does not permit the elimination of the plan terms.[21] Appellant argues that if Mercer wanted to preserve the ability to charge a different interest rate or have other rights on default under the plan, then it must have had some basis to preserve or create such rights. See *H & M Parmely Farms v. Farmers Home Administration* (D.S.D.1990), 127 B.R. 644. Furthermore, he argues that the law recognizes the right of a bank or creditor to create or contract for such rights in the context of bankruptcy, if done by the plan or in the order of confirmation. See *In re O'Farrell* (N.D.Fla.1987), 74 B.R. 421. Consequently, appellant claims that Mercer, by not creating any rights regarding potential default by appellant in the plan, waived any such rights it might have had against appellant when he defaulted.

However, while appellant is correct in stating that creditors have the right to contract for such rights during the pendency of a bankruptcy case, there is nothing in the law governing bankruptcy that says they must do so or else those rights are gone.[22] Therefore, we do not believe that a creditor automatically loses any rights it may have concerning the default of a debtor during the pendency of a Chapter 12 bankruptcy proceeding if it fails to contract for those rights prior to the implementation of the plan.

On the contrary, it has been held that confirmation of a Chapter 12 plan binds the debtor and creditor "only as long as the debtor makes payments according to the plan, or until the plan is closed, dismissed, or converted to a case under Chapter 7 of this title." *Benson, supra*, 516 N.W.2d at 553. Once a debtor defaults, the creditor is no longer bound to the confirmation plan. *Id.* at 554.

---

21. Under the plan, appellant was to pay a fixed interest rate of ten percent.

22. Section 1222(b)(3), Title 11, U.S.Code provides that "the plan *may* * * * provide for the curing or waiving of any default." (Emphasis added.)

Therefore, in the instant case, the trial court could determine whether Mercer had any subsequent rights pursuant to appellant's default despite the fact that such rights had not been contracted for in the bankruptcy plan. We further find no abuse of discretion in the trial court's finding that equity required the reinstatement of the fourteen percent interest rate that had originally been assessed on February 13, 1987 prior to appellant's filing of bankruptcy.

The record reflects that appellant was the one who created the reorganization plan and its terms, including the payment schedule to Mercer. The plan was created for appellant's benefit in an effort to enable him to retain his property. When appellant defaulted, he essentially waived any benefit he may have been entitled to under the plan. Therefore, the trial court did not abuse its discretion in reinstating its prior judgment entry assessing the fourteen percent interest rate.

Moreover, appellant maintains that his discharge in bankruptcy limited Mercer to the interest rate it agreed to under appellant's terms. However, as previously stated in the first assignment of error, appellant's debt to Mercer was never discharged, and therefore, that debt was not extinguished.[23] Furthermore, a discharge in bankruptcy does not affect valid liens on property of the bankrupt which existed prior to the discharge in bankruptcy. See, generally, *In re Beckerle* (S.D.N.Y.1979), 7 B.R. 272; *Ferguson v. Porter* (La.App.1978), 359 So.2d 676; *Application of Halpern* (1967), 54 Misc.2d 541, 283 N.Y.S.2d 89. Therefore, the discharge of appellant's unsecured debts would not affect Mercer's secured claim. On the contrary, Mercer was no longer bound by the plan's terms once appellant defaulted and, consequently, would not be bound to that plan's interest rate.

Accordingly, we hold that the trial court did not abuse its discretion in determining that the original interest rate of fourteen percent should be reinstated under equity principles once appellant defaulted under his own plan with Mercer.

Appellant's second assignment of error is overruled, and the judgment of the Mercer County Court of Common Pleas is affirmed.

*Judgment affirmed.*

EVANS and SHAW, JJ., concur.

---

23. The bankruptcy court discharged only appellant's unsecured debts.